248 N.J. Super. 73 (1991)
590 A.2d 246
MAXINE SCHWARTZMAN, PLAINTIFF-RESPONDENT,
v.
MARVIN SCHWARTZMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1991.
Decided May 7, 1991.
*75 Before Judges ANTELL, SCALERA and KEEFE.[1]
Laurence J. Cutler argued the cause for the appellant.
Stephen K. Fletcher argued the cause for the respondent (Heymann & Fletcher, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
Defendant Marvin Schwartzman appeals from a post divorce judgment issued by the Family Part, denying his application for modification of a property settlement agreement (the Agreement) incorporated into a final judgment of divorce and denying him credit toward alimony arrears dating back to the commencement of plaintiff's employment. For the reasons stated herein, we affirm the judgment under review.
The order in question resulted from a motion filed by plaintiff Maxine Schwartzman to enforce alimony and property payout provisions of the Agreement. Defendant filed a cross-motion for an order modifying his alimony obligation and granting him relief from his property payout responsibility under the Agreement. In support of his cross-motion, defendant filed a certification indicating that the business (Ammco), which was the subject of the property payout provision of the Agreement, had failed, due to no fault of his own, and had been involuntarily *76 terminated. Thus, he argued that he should no longer be required to continue payments under the property payout provision and that his alimony obligation should be reduced in light of his reduced income resulting from the business failure. Further, defendant alleged that plaintiff intentionally neglected to indicate in her motion for enforcement that she was employed, an event which would reduce defendant's alimony obligations under the Agreement. Thus, he argued that plaintiff should be barred from any relief she requested.
The Family Part judge denied defendant's motion for relief from the property payment provisions of the Agreement. He fixed the arrears for alimony in the amount of $1,904.33 and further ordered a reduction, in futuro, of the alimony payment as the result of plaintiff's recent employment. He also ordered that alimony should be adjusted twice yearly to take into account plaintiff's future earnings.
The Agreement provided that defendant was to pay plaintiff the sum of $52,000 over a period of 20 years at $50 per week which sum represented payment in full of plaintiff's interest in defendant's business (Ammco). Defendant argues that, given the dissolution of Ammco and his changed financial condition, he should be relieved from his obligation pursuant to the property payout provision of the Agreement. He argues initially that an equitable distribution agreement, whether unincorporated or incorporated into a final judgment of divorce, is modifiable under the "changed circumstance" standard set forth in Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980), applicable to modifications of alimony and/or support agreements. Alternatively, he argues that, pursuant to R. 4:50-1(f), he is entitled to relief from the property payout obligation, because enforcement of that aspect of the Agreement would be unjust, oppressive and inequitable, given his current financial status. We hold that Lepis does not apply to such agreements and, although, R. 4:50-1(f) affords an avenue of review, defendant's proofs are insufficient to afford him relief under that rule.
*77 In Lepis, supra, the Supreme Court held that alimony and support agreements are always subject to review and modification pursuant to N.J.S.A. 2A:34-23. Id. at 145, 416 A.2d 45. To obtain a modification, the party requesting it must demonstrate "changed circumstances." Id. at 146-147, 416 A.2d 45. However, it is settled law in New Jersey that, unlike an award of alimony or support, property division or equitable distribution provisions may not be adjusted after divorce to reflect unanticipated changes in the parties' circumstances, because the finality of a property division precludes any modification based on such changed circumstances. Mahoney v. Mahoney, 91 N.J. 488, 498, 453 A.2d 527 (1982); Monte v. Monte, 212 N.J. Super. 557, 561, 515 A.2d 1233 (App.Div. 1986); Rosen v. Rosen, 225 N.J. Super. 33, 36, 541 A.2d 716 (App.Div. 1988), certif. denied 111 N.J. 649, 546 A.2d 558 (1988).
However, in Rosen, supra, we recognized that an application for modification of a property settlement agreement could be considered under R. 4:50-1(f). Id. at 36, 541 A.2d 716. Because the rule is designed to reconcile the strong interests in the finality of judgments and the need for judicial efficiency with the equitable notion that courts should avoid unjust results in any case, Baumann v. Marinaro, 95 N.J. 380, 392, 471 A.2d 395 (1984), relief is not available absent a showing of "exceptional and compelling circumstances." Id. at 393, 471 A.2d 395. Stated otherwise, relief can be obtained under the rule only if the party requesting it can demonstrate that enforcement of the order would be unjust, oppressive or inequitable. Quagliato v. Bodner, 115 N.J. Super. 133, 138, 278 A.2d 500 (App.Div. 1971).
Such motions are addressed to the sound discretion of the trial judge whose discretion in such matters is broad. Court Investment Co. v. Perillo, 48 N.J. 334, 341, 225 A.2d 352 (1966). Thus, the judge's decision should not be overturned unless there was a clear abuse of discretion. Matter of Adoption of *78 Child of Indian Heritage, 111 N.J. 155, 184, 543 A.2d 925 (1988).
Clearly, the exceptional circumstances required for relief under R. 4:50-1(f) is not equatable with the lesser standard of "changed circumstances" as utilized in Lepis. Otherwise, we would be allowing defendant to obtain relief through the rule which he is prevented from doing through the Lepis decision. However, even if the exceptional circumstances contemplated by the rule are the same as the legal concept of unconscionability associated with contract enforcement, defendant's proofs do not afford him any relief. It has long been held that "[s]ubsequent events which should have been in contemplation of the parties as possible contingencies when they entered into the contract will not excuse performance." Schiff v. Schiff, 116 N.J. Super. 546, 561, 283 A.2d 131 (App. Div. 1971). Here, the parties anticipated the contingencies of the sale of the business or the defendant's death. The fact that defendant failed to anticipate the failure of the business does not mean that he should not have done so. Clearly, the possibility of the failure of a business over the 20 year period of the payout was a contingency which the defendant could have provided for in the Agreement had he chosen to do so. His lack of foresight is not an exceptional circumstance beyond his control.
Finally, even if a showing of changed financial circumstances could warrant relief under R. 4:50-1(f), defendant's changed financial condition is not so severe as to warrant such relief, given the reduction of his alimony payouts from $350 per week, when the agreement was first effected, to $104 per week at the present time, and the fact that defendant's income only decreased from approximately $49,000 per year before the divorce to $31,200 now. Thus, we do not find any abuse of discretion in the judge's refusal to relieve defendant from his obligation under the property payout provision of the agreement.
*79 Defendant next argues that the reduction in alimony ordered by the trial judge should have been retroactive to the date of the plaintiff's employment. The Agreement provided that should plaintiff become gainfully employed following emancipation of the two children (emancipation has occurred), defendant's alimony obligations would be reduced to the extent of $1.00 for every $3.00 earned up to a maximum reduction of $5,000 per year, based upon the wife's earning up to $15,000 per year. No further reduction would occur if the plaintiff's salary was between $15,000 and $30,000 per year. However, if the wife earned more than $30,000 per year, defendant's alimony obligation would terminate. On October 30, 1989, plaintiff became employed as a temporary employee and apparently earned $5,087 in income by the time she filed her last certification in the matter.
Contrary to defendant's contention, our review of the facts and the court order satisfies us that the judge adjusted defendant's alimony obligations retroactively to the date plaintiff became employed. The record reflects that defendant stopped alimony payments to plaintiff on October 23, 1989, some eighteen weeks before March 3, 1990, the date on which the Family Part judge calculated arrearages for non-payment of alimony. Thus, under the Agreement, plaintiff was owed $3,600 in arrearages, assuming the alimony reduction clause in the Agreement did not come into play. However, the judge ordered that defendant pay arrearages on alimony totaling only $1,904.33. ($3,600 less 1/3 of plaintiff's $5,087 in earnings to that point.) Thus, defendant's contention lacks merit.
Finally, we find no merit in defendant's contention that plaintiff should be denied relief due to her failure to advise the court in her initial application that she was gainfully employed. Whatever misimpression plaintiff's initial certification may have given, it was thoroughly corrected by the time the judge ruled on the merits of the motion and cross-motion. This is not the kind of conduct which a court must punish in order to vindicate *80 its authority. The judge's election not to do so is not an abuse of discretion.
Affirmed.
NOTES
[1] Judge Antell joined in the decision of this case after oral argument with the parties' consent.